# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

TERRY KENT HOLCOMB, II,    )
        )
        Petitioner,    )
        )
v.    )    **Case No. 16-CV-0159-TCK-FHM**
        )
RICK WHITTEN,[1]    )
        )
        Respondent.    )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. #

2) filed by Petitioner Terry Kent Holcomb, II, a state inmate appearing through counsel.

Petitioner challenges the constitutional validity of the judgment and sentence entered

against him in the District Court of Tulsa County, Case No. CF-2011-754. In that case, a

jury convicted Petitioner of five counts of child sexual abuse, in violation of OKLA. STAT.

tit. 21, § 843.5(E), and fixed punishment at five years in prison and a $500 fine for each

count. The trial court sentenced Petitioner accordingly, and ordered the sentences to be

served consecutively and followed by a three-year term of probation. Petitioner alleges he

is entitled to federal habeas relief because (1) the trial court violated his constitutional right

to present a complete defense by excluding critical evidence and (2) appellate counsel

---

[1] Petitioner is incarcerated at the James Crabtree Correctional Center (JCCC). The JCCC's current warden, Rick Whitten, is therefore substituted, in place of Jason Bryant, as party respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note this substitution on the record.

violated his constitutional right to the effective assistance of counsel by failing to raise a meritorious double-jeopardy claim. Respondent filed a response in opposition to the petition (Dkt. # 14), and Petitioner filed a reply (Dkt. # 20). Both parties provided the state court record (Dkt. ## 3, 14, 15) necessary to adjudicate Petitioner's claims.[2] For the reasons that follow, the Court denies Petitioner's request for an evidentiary hearing, denies the petition for writ of habeas corpus, and declines to issue a certificate of appealability as to any issues raised in the petition.

## BACKGROUND

In August 2010, Petitioner moved to Tulsa, Oklahoma, with his two children, T.H. and O.H, and his ex-wife's daughter, N.H.[3] Tr. vol. 1, at 72, 75; Tr. vol. 3, at 399-401; Tr.

---

[2] Petitioner electronically filed, under seal, an Appendix (Dkt. # 3) that includes all state court trial transcripts, trial exhibits, and most relevant appellate briefs and orders. The Court will cite to the Appendix and the page numbers assigned therein as "App. D[page number]." The trial transcripts will be cited as "Tr. vol. [number], at [page number]." Recordings will be cited as "App. Rec. [number]." Respondent filed the original record which consists of two volumes. Dkt. ## 15-1, 15-2. Excerpts from the original record will be cited as "Dkt. # 15-[number], O.R. vol. [number], at [page number]." For citations to the original record and any other documents not included in the Appendix, the Court will use the CM/ECF header page number found in the upper right-hand corner of each document.

[3] Petitioner married N.H.'s mother, F.S., when N.H. was five years old. Tr. vol. 1, at 74; Tr. vol. 6, at 991. Petitioner filed for divorce in June 2008 after F.S. left Petitioner, and her three children, to pursue a relationship with another man. Tr. vol. 3, at 393-94; Tr. vol. 6, at 996-1000. Before or during the divorce proceedings, Child Protective Services (CPS) in Houston, Texas, substantiated allegations that F.S. neglected all three children before she abandoned them, but CPS found no evidence to support F.S.'s post-abandonment allegations that Petitioner sexually abused N.H. Tr. vol. 6, at 1001-03. F.S. testified at Petitioner's trial that she falsely accused Petitioner of sexually abusing N.H. in Texas. Tr. vol. 3, at 393-94, 427-28. It does not appear that Petitioner formally adopted N.H.; rather it appears he was named as N.H.'s guardian or conservator after the divorce. *Id.* at 429; Tr. vol. 6, at 1004-05.

vol. 6, at 1007. At the time, N.H. was 10 years old and in the fourth grade. Tr. vol. 1, at 74-80.

Sometime in February 2011, N.H. told two of her friends, S.E. and B.E., that she and her father "had sex." Tr. vol. 1, at 80, 91-92, 119-21; Tr. vol. 2, at 161. S.E. told her mother about N.H.'s disclosure. Tr. vol. 4, at 470, 473-77, 492-94. On February 23, 2011, S.E.'s mother reported the disclosure to the Department of Human Services (DHS) and to the counselor at N.H.'s school. *Id.* at 492-94; Tr. vol. 3, at 315, 317, 342-43. The school counselor, Bobbie Fields, separately spoke with S.E., B.E., and N.H. Tr. vol. 2, at 154, 163-70. N.H. confirmed that she told S.E. and B.E. that she and her dad "had been having sex." *Id.* at 170-71. N.H. also told Fields that she and her father "had sex sometimes about once a week," that "it had only hurt the first time," and that "he had told her he would have to stop after she started getting her period anyway because she could get pregnant." *Id.* at 171, 174. Fields asked N.H. what she meant by "sex," and N.H. explained that "he put his privates in her privates." *Id.* at 174-75. Fields contacted DHS and the school resource officer, David Cotney. *Id.* at 169, 176, 182-83. Cotney, in turn, contacted the Tulsa Police Department. *Id.* at 182-83.

Tulsa Police Officer John West drove to N.H.'s school, took N.H. into protective custody, and transported her to the Justice Center in Tulsa, Oklahoma. Tr. vol. 2, at 191-94. There, David Glanz, a forensic interviewer employed by the Child Abuse Network, interviewed N.H. Tr. vol. 2, at 191-94, 198-204. That same day, Dr. Mike Baxter, a child abuse pediatrician, examined N.H. and noted possible injuries to her hymenal tissue. *Id.* at 242-43; Tr. vol. 3, at 266-70. On February 28, 2011, N.H. returned to the Justice Center

for a follow-up examination. Tr. vol. 2, at 270. Dr. Nichole Wallace, a child abuse pediatrician, examined N.H. and found "nothing abnormal." Tr. vol. 2, at 235; Tr. vol. 2, at 267-72.

Based on the forensic interview, the medical examinations and a police investigation, the State charged Petitioner, in the District Court of Tulsa County, Case No. CF-2011-754, with five counts of child sexual abuse in violation of OKLA. STAT. tit. 21, § 843.5(E). Dkt. # 15-1, O.R. vol. 1, at 39-42. In each count, the State alleged:

> [Petitioner] on or about between 7/1/2010 and 2/23/2011, in Tulsa County, State of Oklahoma and within the jurisdiction of this Court, did commit the crime of **CHILD SEXUAL ABUSE**, a Felony, by unlawfully, feloniously, willfully, maliciously and intentionally, sexually abusing one N.H., a child under the age of 18, to-wit: 10 years of age, and did then and there sexually abuse said child by inserting his penis in her vagina. This incident occurred at 10620 E. 66th St. #167, Tulsa, Tulsa County, Oklahoma, while the child was under the care and custody of the defendant, who was N.H.'s step-father residing in the same home with her and therefore a person responsible for her care.

*Id.* At the conclusion of a five-day trial, the jury found Petitioner guilty as charged. Tr. vol. 7, at 1136. On February 19, 2013, the trial court sentenced Petitioner, in accordance with the jury's recommendations, to five years imprisonment and a $500 fine for each conviction. App. D713-D15. The trial court ordered the sentences to be served consecutively and to be followed by a three-year term of probation. *Id.* at D714.

Represented by counsel, Petitioner filed a timely direct appeal raising four propositions of error:

I. The trial court erred by allowing other "bad acts" evidence to be admitted.

II. The trial court erred by not allowing defense to present evidence supporting his defense.

4

III. The [Petitioner] was prejudiced [by] the State's failure to disclose evidence in violation of *Allen v. District Ct. of Washington Co.* and the Discovery Code.

IV. The trial court erred by omitting an instruction to the jury regarding inconsistent statements by N.H.

App. D41. By unpublished summary opinion filed May 22, 2014, in Case No. F-2013-197, the Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's convictions and sentences. App. D41-D48. Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Dkt. # 2, at 7.

Petitioner filed a pro se application for postconviction relief in state district court on February 9, 2015, raising nine propositions of error:

1) "The trial court impermissibly allowed evidence of other wrongs;"

2) "Prosecutorial misconduct in closing argument deprived the Petitioner of a fair trial;"

3) "Prosecutorial misconduct in offering perjured testimony from several witnesses deprived Petitioner of a fair trial;"

4) "Prosecutorial misconduct in improper communications with a defense witness and ex parte communications with the trial court deprived Petitioner of a fair trial;"

5) "The trial court erred in allowing perjured testimony to be offered from several witnesses which deprived the Petitioner of a fair trial;"

6) "Jury instruction regarding punishment did not comply with the statute;"

7) "The trial court did not have jurisdiction over Petitioner;"

8) "Ineffective assistance of appellate counsel;" and

9) "Cumulative error."

App. D71; *see also* App. D49-D66 (Petitioner's application for postconviction relief). The state district court denied relief by order filed June 1, 2015. App. D67-D76. On September 30, 2015, the OCCA affirmed the denial of postconviction relief. App. D77.

Petitioner filed the instant federal habeas petition on March 23, 2016. Dkt. # 2.

*ANALYSIS*

Petitioner seeks federal habeas relief on two grounds. He claims (1) the trial court violated his rights, under the Sixth and Fourteenth Amendments, to present a complete defense and (2) appellate counsel's failure to raise a meritorious double-jeopardy claim violated his Sixth Amendment right to the effective assistance of counsel. Dkt. # 2, at 41, 54.

## I. Claim One: Right to present a complete defense

Petitioner claims that the State violated his Sixth and Fourteenth Amendment rights to due process, to present witnesses, and to confront the witnesses against him. Dkt. # 2, at 41-58. He specifically alleges that

> the trial court literally shut down [his] defense by refusing to allow him to put on four key pieces of evidence: (1) that he did not fit a sex offender profile, (2) that N.[H.]'s forensic interview was inconsistent with a child that has been sexually traumatized, (3) that N.[H.]'s physical exam was not consistent with studies of similar prepubescent children subjected to vaginal penetration for a prolonged period of time, and (4) that N.[H.]'s diary was inconsistent with a child that was being sexually traumatized.

*Id.* at 50.

Respondent contends that portions of Claim One are unexhausted and should be deemed procedurally defaulted, and that 28 U.S.C. § 2254(d) bars habeas relief on the exhausted portion of Claim One. Dkt. # 14, at 5-24.

### A. Petitioner procedurally defaulted portions of Claim One

#### 1. Exhaustion

The Court agrees with Respondent that Claim One is only partially exhausted because it is significantly broader than the claim Petitioner presented in state court. Dkt. #

14, at 5. Before seeking federal habeas relief, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). The substance of a federal claim "includes not only the constitutional guarantee at issue, but also the underlying facts that entitle a petitioner to relief." *Jeremy Williams v. Trammell*, 782 F.3d 1184, 1210 (10th Cir. 2015) (*Jeremy Williams*). The AEDPA's exhaustion requirement "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To further that design, the claim presented in state court "must be the 'substantial equivalent' of its federal habeas counterpart." *Grant v. Royal*, 886 F.3d 874, 891 (10th Cir. 2018) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)), *cert. denied sub nom. Grant v. Carpenter*, No. 18-6713, 2019 WL 177713 (U.S. Jan. 14, 2019); *see also Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (explaining that a habeas "petitioner cannot assert entirely different arguments from those raised before the state court").

As evidenced by Petitioner's state appellate brief (App. D30-D33), Petitioner claimed in state court that the trial court violated his Sixth and Fourteenth Amendment rights to present a complete defense by excluding proffered opinion testimony from one expert witnesses: Dr. Paul Shields, a licensed marriage and family therapist who provided counseling to Petitioner after his arrest. Petitioner argued in state court, and reasserts in Claim One, that the trial court should have permitted Shields to testify that he evaluated Petitioner and determined that Petitioner "did not fit a sex offender profile." Dkt. # 2, at

53-54; *see also* Tr. vol. 6, at 944-45 (offer of proof made in trial court); App. D31 (stating in state appellate brief that "Shields was prepared to testify at trial that his test results indicated that the [Petitioner] is not a sex offender" and asserting that "[d]enying the admission of Dr. Shield's [sic] opinion was error").

But Petitioner's state appellate brief did not mention the remaining portions of Claim One—i.e., the portions alleging that the trial court violated Petitioner's constitutional right to present a defense by erroneously excluding expert testimony relating to (1) N.H.'s lack of emotion during the forensic interview, (2) the results of her physical examinations, and (3) the contents of her diary. *See* App. D30-D33.

In his reply brief, Petitioner argues that he exhausted these portions of Claim One because (1) "the issue [presented in state court] was not limited to whether the psychologist should testify whether Petitioner fit a sex offender profile, but to *any* opinion the expert may have had based on 'a reliable basis of knowledge and experience of his discipline,'" and (2) the habeas petition merely asserts additional facts from the record to support the "same claim" he raised in state court. Dkt. # 20, at 18-19, 35-36. Neither argument is persuasive. First, as just discussed, Petitioner's state appellate brief focused solely on the exclusion of Shields' opinion that Petitioner did not fit the profile of a sex offender. App. D30-D33. Petitioner's argument to the contrary is directly contradicted by the record. Second, "[w]hile a habeas petitioner might still be able to present to a federal habeas court 'bits of evidence' not previously presented in state court, he cannot first present evidence in a federal habeas proceeding that 'places the claims in a significantly different legal posture' without first presenting that evidence in state court." *Hawkins*, 291 F.3d at 670

(quoting *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997)). Here, Petitioner does not merely present new "bits of evidence" to support his claim that he was denied his constitutional right to present a defense based on the exclusion of Shields' proffered testimony. Instead, he seeks to expand his claim by alleging three additional evidentiary errors—each of which rely on discrete sets of substantive and procedural facts—that were not presented in state court proceedings. Dkt. # 2, at 45-53. Petitioner's argument that his state claim and habeas claim are the "same" is thus unavailing. *See Grant*, 886 F.3d at 891 ("To satisfy exhaustion, then, the habeas petition's focus—as well as the alleged error that it identifies—cannot depart significantly from what the petitioner had presented to the state court."). For these reasons, the Court finds that Claim One is partially unexhausted.

## 2. Anticipatory procedural bar

The Court further agrees with Respondent that it is appropriate to apply an anticipatory procedural bar and deem the unexhausted portions of Claim One procedurally defaulted. Dkt. # 14, at 20-23. As a general rule, "a federal court should dismiss unexhausted claims without prejudice so that the [prisoner] can pursue available state-court remedies." *Grant*, 886 F.3d at 891-92 (quoting *Bland*, 459 F.3d at 1012). However, dismissal of unexhausted claims "is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds." *Id.* at 892 (quoting *Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999)). Rather, any unexhausted claims that the state court would find procedurally barred, should the prisoner return to state court to exhaust them, are subject to an anticipatory procedural bar and are procedurally defaulted for purposes of federal habeas review. *Id.*; *see also Anderson v.*

*Sirmons*, 476 F.3d 1131, 1139 n. 7 (10th Cir. 2007) (defining anticipatory procedural bar).

The record demonstrates that Petitioner did not raise the unexhausted portions of Claim One either on direct appeal (App. D30-D33) or in his first application for postconviction relief (App. D71). As Respondent argues, the OCCA routinely applies a procedural bar to claims not raised either on direct appeal or in a first application for postconviction relief unless the petitioner provides "sufficient reason" for his failure to raise the claim in an earlier proceeding. Dkt. # 14, at 20; *see* OKLA. STAT. tit. 22, § 1086 (2019); *Moore v. State*, 889 P.2d 1253, 1255-56 (Okla. Crim. App. 1995). Oklahoma's practice of imposing a procedural bar when claims are first raised in a second application for postconviction relief is an independent and adequate state procedural rule that bars habeas review. *Hawkins*, 291 F.3d at 670; *see also Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998) (explaining that state procedural rule is independent if it is grounded only in state law and adequate if state courts regularly apply the rule to all similar claims).

Because the Court finds it would be futile for Petitioner to return to state court and attempt to exhaust the unexhausted portions of Claim One, the Court deems those portions of Claim One procedurally defaulted.

### 3. Showings necessary to overcome procedural default

When a federal court applies an anticipatory procedural bar to an unexhausted federal claim, federal habeas review of that claim is barred unless the prisoner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a "fundamental miscarriage of justice" will result if the court does not review the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In response to Respondent's argument that he procedurally defaulted portions of Claim One, Petitioner fails to argue, let alone demonstrate, that he can make the showings necessary to overcome the procedural default. *See* Dkt. # 20, generally.[4] Rather, he maintains that Claim One is fully exhausted. *Id.* at 18-19, 35-36. For the reasons previously discussed, that argument is contrary to the record. *See supra* pp. 6-9.

### 4. Conclusion

Based on the foregoing, the Court concludes that Petitioner failed to exhaust those portions of Claim One alleging that the trial court violated his constitutional right to present a defense by erroneously excluding expert testimony relating to (1) N.H.'s lack of emotion during the forensic interview, (2) the results of her physical examinations, and (3) the contents of her diary. The Court further concludes that it is appropriate to apply an anticipatory bar to deem these portions of Claim One procedurally defaulted and that Petitioner fails to make the showings necessary to overcome the procedural default. Thus, the Court denies habeas relief as to these portions of Claim One.

### B. Exclusion of Dr. Shields' opinion testimony

Petitioner properly exhausted the portion of Claim One alleging that the trial court violated his constitutional right to present a complete defense by refusing to allow one of

---

[4] In his reply brief, Petitioner does assert that he can show cause and prejudice to excuse the procedural default of Claim Two, his ineffective-assistance-of-appellate-counsel claim. *See* Dkt. # 20, at 15-18, 37-44. It is not entirely clear whether he intended to confine his "cause and prejudice" arguments solely to Claim Two. *See id.* Regardless, for the reasons discussed in Section II.C. of this opinion, *see supra* pp. 21-24, the Court finds Petitioner cannot make the necessary showings to overcome the procedural default of any of his unexhausted claims.

Petitioner's expert witnesses, Dr. Paul Shields, to testify that in his opinion Petitioner did not fit the profile of a sex offender. Dkt. # 2, at 53-54; *see also* Tr. vol. 6, at 945; App. D31 ("Shields was prepared to testify at trial that his test results indicated that the [Petitioner] is not a sex offender"). The OCCA adjudicated this claim on the merits and rejected it. App. D45. In determining that Petitioner "was not denied the opportunity to present a meaningful defense," the OCCA reasoned:

> Admission of evidence is within the trial court's discretion. *Jones v. State*, 2009 OK CR 1, ¶ 39, 201 P.3d 869, 881. When presenting defense witnesses the defendant must comply with rules of procedure and evidence. *Simpson v. State*, 2010 OK CR 6, ¶ 9, 230 P.3d 888, 895. We will not disturb a trial court's ruling excluding witness testimony without a clear showing of abuse and resulting prejudice to the defendant. *Id.* The record shows [Petitioner] wanted his expert to testify that, in his opinion, Holcomb was not a sex offender. This would directly invade the province of the jury by telling jurors what result to reach. Expert opinion testimony is admissible when it helps jurors understand the facts. 12 O.S. 2011, § 2702. Expert opinion may, under some circumstances, embrace an ultimate fact, but may not simply tell the jury what result to reach. *Day v. State*, 2013 OK CR 8, ¶ 11, 303 P.3d 291, 297, *r'hng denied* 2013 OK CR 15, 316 P.3d 931; *Ball v. State*, 2007 OK CR 42, ¶ 15, 173 P.3d 81, 86. As the evidence was not admissible, the trial court's refusal to admit it did not deny [Petitioner] an opportunity to present a meaningful defense. *Simpson*, 2010 OK CR 6, ¶ 9, 230 P.3d at 895.

App. D45.

Petitioner appears to argue that the OCCA either failed to apply any federal law or unreasonably applied clearly established federal law when it rejected his constitutional claim. Dkt. # 2, at 58; Dkt. # 20, at 18-28.

Respondent contends that Petitioner cannot make the requisite showings under § 2254(d) to obtain habeas relief on the exhausted portion of Claim One. Dkt. # 14, at 11-20.

### 1. Merits adjudication

Because the OCCA adjudicated this portion of Claim One on the merits, 28 U.S.C. § 2254(d) limits this Court's review.[5] When a state court adjudicates the merits of a prisoner's federal claim, a federal court may grant habeas relief only if the prisoner demonstrates that the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1),[6] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, *id.* § 2254(d)(2).

To analyze a claim subject to review under § 2254(d), the federal court must "first determine whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824

---

[5] In his petition and reply brief, Petitioner vigorously argues that his claim is not subject to review under § 2254(d) because the OCCA "did not address the constitutional arguments raised," Dkt. # 2, at 58, and "made specific reference to no federal law at all," Dkt. # 20, at 21; s*ee also id.* at 9-15, 21-28 (generally arguing that AEDPA deference does not apply). Contrary to Petitioner's argument, the OCCA adjudicated his constitutional claim on the merits despite its failure to cite any federal law. *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (reiterating that "a state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them'" (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)); *Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (applying § 2254(d) "notwithstanding the [OCCA's] failure to cite or discuss federal case law"). Thus, § 2254(d) guides this Court's review.

[6] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000) (*Terry Williams*)).

(10th Cir. 2015). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). Thus, "only if [a federal court] answer[s] affirmatively the threshold question as to the existence of clearly established federal law, may [the court] ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.*

A state court decision is "contrary to" Supreme Court precedent "only if 'the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nonetheless arrives at a [different] result.'" *Hanson*, 797 F.3d at 824 (alterations in original) (quoting *Bland*, 459 F.3d at 1009). "A state court decision unreasonably applies federal law if 'the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 824-25 (alterations in original) (quoting *Bland*, 459 F.3d at 1009). The standards set forth in § 2254(d) are "highly deferential." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). Thus, "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion. . . . a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## 2. Clearly established federal law

Both parties primarily identify *Holmes v. South Carolina*, 547 U.S. 319 (2006), as the clearly established federal law governing Petitioner's claim. Dkt. # 2, at 58; Dkt. # 14, at 13. In *Holmes*, the Supreme Court stated the well-established proposition that "the

Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" 547 U.S. at 324 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). But the *Holmes* Court also reiterated that this right is not absolute; rather, "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Id.* (alteration in original) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (identifying a criminal defendant's rights to confront and cross-examine witnesses as "fundamental" trial rights but acknowledging those rights are "not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process"). As the *Holmes* Court stated, "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." 547 U.S. at 326.

### 3.    § 2254(d) bars habeas relief

For several reasons, the Court agrees with Respondent that § 2254(d) bars habeas relief on the exhausted portion of Claim One. First, Petitioner cannot demonstrate that the OCCA's decision is "contrary to" clearly established federal law on the basis that the OCCA "applie[d] a rule that contradicts" the rules set forth in governing Supreme Court

cases.  *See Hanson*, 797 F.3d at 824.  Instead, it is clear from the OCCA's decision that the OCCA identified and applied the legal principles set forth in *Holmes* and other Supreme Court precedent in determining that Petitioner was not deprived of his right to present a complete defense when the trial court excluded Shields' proffered expert opinion that Petitioner was not a sex offender.  App. D45.

Second, Petitioner cannot show that the OCCA's decision is "contrary to" clearly established federal law on the basis that the OCCA "confront[ed] a set of facts that are materially indistinguishable from" a Supreme Court decision and nevertheless reached a different result.  *See Hanson*, 797 F.3d at 824.  Petitioner cites several Supreme Court cases which, like *Holmes*, set forth general principles governing a criminal defendant's right to present evidence and witnesses.  Dkt. # 2, at 46-58; Dkt. # 20, at 18-36.  But Petitioner fails to cite any Supreme Court precedent squarely addressing a constitutional challenge to the exclusion of an expert opinion that a criminal defendant accused of child sex crimes does not fit the profile of a sex offender.  *See id.*  Petitioner instead primarily argues that the OCCA's decision is contrary to state court and federal circuit court decisions involving the exclusion of expert testimony.  *See id.* at 51-54; Dkt. # 20, at 23-33.  Specifically, he relies on federal circuit cases to assert that Shields' testimony should have been admitted because it "was 'categorically different' from any other evidence the Petitioner was capable of presenting and that admission of such evidence "is indeed common in [child sexual abuse]

cases." Dkt. # 2, at 52-54.[7] But even if lower federal courts establish specific rules or adopt specific practices regarding the admission of expert testimony in child sexual abuse cases, Petitioner does not argue, let alone show, that the Supreme Court has established any such rules. Lower federal courts may not "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (*per curiam*) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)). As a result, to the extent Petitioner argues the OCCA's decision is "contrary to" clearly established federal law, the Court rejects that argument.

Third, Petitioner fails to persuasively argue that the OCCA's ruling is incorrect, much less that it is objectively unreasonable. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)

---

[7] For example, Petitioner cites *Kittelson v. Dretke*, 426 F.3d 306 (5th Cir. 2005), for the proposition that "expert testimony relating to a defendant's sex offender profile [is] a commonly-recognized area of expertise routinely admitted at federal trials." Dkt. # 20, at 28; *see also id.* at 54. Even if a decision from the United States Court of Appeals for the Fifth Circuit were relevant to the § 2254(d) analysis, which it is not, *Kittelson* lacks any persuasive value because it did not address the question that was before the OCCA—i.e., the admissibility of opinion testimony regarding whether a criminal defendant charged with child sexual abuse fits the profile of a sex offender. In *Kittleson*, the Fifth Circuit mentioned, in passing, that a "psychiatrist, Dr. Quijano, testified that Kittelson did not fit the profile of a sex offender." 426 F.3d at 312. But the Fifth Circuit did not analyze whether the psychiatrist's testimony was properly or improperly admitted because that question was not before the court. *See id.* at 314-15 (identifying issues included in certificate of appealability). Petitioner also cites decisions from the Sixth, Ninth and Tenth Circuit. Dkt. # 2, at 51-54; Dkt. # 20, at 23-33. Even accepting Petitioner's view that some of these cases are factually similar, none of these cases constitutes clearly established federal law for purposes of the § 2254(d) analysis. *Andrade*, 538 U.S. at 71-72.

("Relief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). As discussed, the legal principles governing Petitioner's federal claim are general, not specific. Significantly, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Alvarado*, 541 U.S. at 664. Here, the OCCA applied general legal principles from Supreme Court precedent and reasoned that, under the facts of this case, Shields' expert opinion that Petitioner—who was charged with five counts of child sexual abuse—was not a sex offender would invade the province of the jury and, therefore, was inadmissible and properly excluded. *Id.* Having reviewed the trial transcripts, the trial court's evidentiary ruling, the OCCA's opinion, and relevant case law, the Court finds nothing objectively unreasonable about the OCCA's application of the clearly established federal law that governs Petitioner's claim.

For these reasons, the Court concludes that Petitioner cannot show that the OCCA's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[8]

---

[8] In his reply brief, Petitioner asserts that "[n]o fairminded jurist would have reached the decision rendered by the OCCA in this case." Dkt. # 20, at 28. But it appears that fairminded jurists from a number of jurisdictions have reached the same decision as the OCCA on the very issue Petitioner presents in Claim One. *See State v. Walker*, 433 P.3d 202, 214-15 (Mont. 2018) (noting "that other jurisdictions almost universally reject the introduction of expert testimony regarding whether a defendant fits a sexual offender profile" and citing cases from 11 state courts and one federal circuit court). This further supports the objective reasonableness of the OCCA's decision.

*Harrington v. Richter*, 562 U.S. 86, 103 (2011). The Court therefore denies habeas relief on the exhausted portion of Claim One.

## II.    Claim Two:  Ineffective assistance of appellate counsel

Petitioner claims he was deprived of his Sixth Amendment right to the effective assistance of appellate counsel. Dkt. # 2, at 59-65. He specifically alleges that appellate counsel failed to argue on direct appeal that "the 'carbon-copy' five count Information containing identical language in each of the counts violated [his] right to notice and his right to be protected against double jeopardy." *Id.* at 60. Petitioner asserts that he raised this claim in state postconviction proceedings. *Id.* at 65.

Respondent, however, contends that Claim Two is unexhausted because it is "distinctly different" from the ineffective-assistance-of-appellate-counsel claim Petitioner presented in state postconviction proceedings. Dkt. # 14, at 24-29. Respondent further contends that because the OCCA would likely deem this claim procedurally barred if Petitioner returned to state court and raised it in a successive postconviction application, the Court should apply an anticipatory procedural bar and deem Claim Two procedurally defaulted. *Id.* at 29-32.

### A.    Exhaustion

The Court agrees with Respondent that Claim Two is unexhausted. As previously discussed, to properly exhaust a federal claim, the claim presented in state court must be the "substantial equivalent" of the claim presented in the habeas petition. *Grant*, 886 F.3d at 891. Petitioner did assert an ineffective-assistance-of-appellate-counsel claim in his application for postconviction relief. App. D71. But, as Respondent argues, Petitioner

claimed in state court that appellate counsel was ineffective for failing to present the issues identified in the first seven propositions of his application for postconviction relief. App. D62-D63. None of the first seven propositions alleged the double-jeopardy claim Petitioner identifies in Claim Two. *See id.* at D49-D66. Petitioner did assert, in his seventh proposition, that the trial court "did not have jurisdiction over [him]." *Id.* at D61. Petitioner specifically asserted that the trial court lacked jurisdiction because

> The Information charges the Defendant with incidents occurring between 7/1/2010 and 2/23/2011 in Tulsa County, State of Oklahoma; however, Defendant did not move to the State of Oklahoma until August of 2010. Furthermore, the varying testimony given by the alleged victim, N.H., described events occurring in their home in Houston, TX. Clearly the Court would not have jurisdiction over any alleged events in Houston, TX.

*Id.*

In contrast to the jurisdictional claim he presented in state court, Petitioner contends in Claim Two that appellate counsel was ineffective for failing to challenge the trial court's jurisdiction on the basis that the charging document's use of identical language in each of the five counts against him violated his right to notice and his right to be protected against double jeopardy. Dkt. # 2, at 60-65.

Consequently, the Court agrees with Respondent that the ineffective-assistance-of-appellate-counsel claim Petitioner raises in Claim Two is not the same claim he presented in state court proceedings. Thus, Claim Two is unexhausted. *See Smallwood*, 191 F.3d at 1267 (finding petitioner failed to exhaust ineffective-assistance-of-counsel claim when "petitioner raised an ineffective assistance of counsel claim on direct appeal, [but] based it on different reasons than those expressed in his habeas petition.").

20

### B.     Anticipatory procedural bar

The Court further agrees with Respondent that Claim Two is subject to an anticipatory procedural bar and should be deemed procedurally defaulted because, should Petitioner attempt to return to state court to exhaust it now, the state courts likely would find that claim procedurally barred. *See Anderson*, 476 F.3d at 1139 n.7; OKLA. STAT. tit. 22, § 1086 (generally barring postconviction relief for claims not raised in first postconviction application); *Moore*, 889 P.2d at 1255-56.

### C.     Cause and prejudice

As previously discussed, when a state prisoner procedurally defaults his federal claim, federal habeas review of that claim is barred unless the prisoner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a "fundamental miscarriage of justice" will result if the court does not review the claim. *Coleman*, 501 U.S. at 750.

Petitioner does not invoke the miscarriage-of-justice exception. Instead, he contends he can demonstrate "cause and prejudice" to overcome the procedural default of Claim Two. Dkt. # 20, at 15-18, 37-43. The cause standard requires a showing "that some objective factor external to the defense" prevented a habeas petitioner from complying with state procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In addition to cause, the prisoner must establish "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). If a prisoner fails to demonstrate cause, the federal court need not consider whether the petitioner can demonstrate prejudice. *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995).

For the reasons that follow, the Court finds that Petitioner cannot establish cause to overcome the procedural default of Claim Two. First, Petitioner appears to contend that "cause" for the procedural default rests, in part, on the fact that the State did not provide him with postconviction counsel. Dkt. # 20, at 37, 39-43. But this does not demonstrate "cause" because Petitioner has "no constitutional right to an attorney in state post-conviction proceedings." *Coleman*, 501 U.S. at 752; *see also Quintana v. Hansen*, 733 F. App'x 439, 444 (10th Cir. 2018) (unpublished)[9] (rejecting habeas petitioner's argument that Colorado's failure to appoint postconviction counsel supported "cause" to excuse procedural default), *cert. denied*, 139 S. Ct. 334 (2018).

Second, and relatedly, Petitioner contends the Supreme Court's ruling in *Martinez v. Ryan*, 566 U.S. 1 (2012), permits him to overcome the procedural default. Petitioner asserts, "Under the recent ruling in *Martinez* . . . the State's failure to provide Petitioner with counsel who would have been able to identify [the double-jeopardy claim] was the *cause* that the claim was not properly presented in Petitioner's post-conviction application." Dkt. # 20, at 42-43 (emphasis in original). In *Coleman*, the Supreme Court held, as a general rule, that ineffective assistance of postconviction counsel "does not qualify as cause to excuse a procedural default" because there is no constitutional right to postconviction counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017) (citing *Coleman*, 501 U.S. 722). In *Martinez* and *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court carved out a "narrow exception to *Coleman*'s general rule." *Davila*, 137

_____

[9] The Court cites this unpublished decision as persuasive, rather than precedential, authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

22

S. Ct. at 2062. "That exception treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." *Id.* at 2062-63. But *Davila* expressly refused to extend the *Martinez* exception to cases involving the procedural default of an ineffective-assistance-of-appellate counsel claim. *Id.* at 2063. The *Davila* Court reasoned that because such claims "*necessarily* must be heard in collateral proceedings, where counsel is not constitutionally guaranteed," the "equitable concerns raised in *Martinez* do not apply." *Id.* at 2068; *see id.* (explaining that the concerns in *Martinez* and *Trevino* involved choices made by states which either expressly or effectively required ineffective-assistance-of-trial-counsel claims to be raised on collateral review instead of through the direct appeal process). Petitioner's argument for application of the *Martinez* exception in this case is not entirely clear. Regardless, for two reasons, Petitioner cannot rely on *Martinez* to overcome the procedural default of Claim Two. First, Petitioner appeared pro se in state postconviction proceedings and cannot bring an ineffective-assistance-of-counsel claim against himself. Second, even disregarding Petitioner's lack of postconviction counsel, the *Martinez* exception, as confined by *Davila*, would not allow Petitioner to overcome the procedural default of the ineffective-assistance-of-appellate-counsel claim he raises in Claim Two.

Third, and lastly, Petitioner suggests the "cause" for his procedural default of Claim Two stems from his pro se status in state postconviction proceedings, his lack of "training in legal process or procedures," his difficulties in obtaining trial transcripts, and his lack of

sufficient access to a law library and adequate legal resources. Dkt. # 20, at 41. But these factors, most of which are not external to the defense, are insufficient to establish cause for his procedural default of Claim Two. *See, e.g.*, *Steele v. Young*, 11 F.3d 1518, 1522 (10th Cir. 1993) ("[Petitioner's] status as a pro se petitioner and his deficiencies in reading and writing skills are not external factors that prevented [petitioner] or his counsel from raising the double jeopardy issue on direct appeal."); *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir. 1991) (citing cases and concluding habeas petitioner's "pro se status and his corresponding lack of awareness and training on legal issues [did] not constitute adequate cause" to excuse the procedural default of his claims).

For these reasons, the Court finds that Petitioner fails to make the necessary showings to overcome the procedural default of Claim Two.

### D. Conclusion

Petitioner failed to exhaust Claim Two and the Court agrees with Respondent that the claim is subject to an anticipatory procedural bar and should be deemed procedurally defaulted. Because Petitioner fails to overcome the procedural default, the Court denies habeas relief on Claim Two.

## III. Evidentiary hearing

In his petition and in his reply brief, Petitioner requests an evidentiary hearing. Dkt. # 2, at 65; Dkt. # 20, at 44. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474. Because Petitioner procedurally defaulted Claim Two

and portions of Claim One and because § 2254(d) bars relief on the exhausted portion of Claim One, the Court denies his requests for an evidentiary hearing. *See id.* ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Smith v. Aldridge*, 904 F.3d 874, 886 (10th Cir. 2018) (noting that a federal court reviewing a § 2254 petition "can only order evidentiary hearings if the petitioner meets the requirements in *both* §§ 2254(d) and (e)(2)"); *Thacker v. Workman*, 678 F.3d 820, 836 (10th Cir. 2012) ("Because, however, Thacker's [habeas] claim is procedurally barred, the district court did not err in failing to conduct an evidentiary hearing.").

## CONCLUSION

Based on the foregoing analysis, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Court therefore denies his petition for a writ of habeas corpus. The Court also denies Petitioner's requests for an evidentiary hearing.

### Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, requires a district court "issue or deny a certificate of appealability when it enters a final order adverse to the [petitioner]." The district court may issue a certificate of appealability (COA) "only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies a habeas petition by rejecting the merits of a petitioner's constitutional claims, the petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court denies the habeas petition on procedural grounds, the petitioner must show both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

For these reasons discussed in the analysis section of this opinion, the Court finds that Petitioner cannot make the showings necessary to obtain a certificate of appealability as to either of his habeas claims. The Court therefore declines to issue a certificate of appealability as to either claim.

### ACCORDINGLY, IT IS HEREBY ORDERED that:

1. The Clerk of Court shall note the substitution of Rick Whitten, in place of Jason Bryant, as party Respondent.

2. The petition for a writ of habeas corpus (Dkt. # 2) is **denied**.

3. Petitioner's requests for an evidentiary hearing are **denied**.

4. A certificate of appealability is **denied**.

5. A separate Judgment shall be entered herewith.

**TERENCE KERN**
**United States District Judge**